Oh, yes. Oh, yes. Oh, yes. The Alcala Court, 5th District, State of Illinois, is now in session. Please be seated. Good morning. Let's start with the People v. Gary Warwick. I'll mark you, but on behalf of the economy. Good morning, Your Honor. Please report. My name is Patrick Daly. I'm from the Office of the State's Attorney's Appellate Prosecutor's Office, and I'm here on behalf of the people. I have to get used to doing that because I've always not done it before. 1974, Richard Nixon was impeached. Gerald Ford became President of the United States. A gallon of gas was 55 cents, and the average cost of a home was $35,000, which is less than what some people pay for cars these days. It was a long time ago. And in 1974, first-degree murder charges were dismissed against Gary Warwick. Nothing happened in that time period from 1974 until 2013, when the state re-initiated charges of first-degree murder. There wasn't any new investigation that was done in that intervening time period. That much was acknowledged by the state. There was no change in the factual circumstances in the sense of what the state's evidence would be or would not be. And we really don't know from the record why the charges were brought again in 2013. What we do know is we have about a 40-year time period between the time the charges were dismissed and re-initiated. I bring this up because I want to put that particular factual consideration at the fore here, because I think that this case presents what I would say two psychological impediments, as we kind of consider the case. This first psychological impediment is what I think we would all agree is the extremity of the delay. I think if defense counsel and I agree on anything, we're going to agree that there's really no case out there in the reported decisions that we both read, and we read quite a few, with this type of delay. Now, I bring this up because I think I want to get to the court's, you know, posture that a delay is a delay. And the courts have held that the delay in and of itself is not the embodiment of a Fifth Amendment due process. But it's the delay as it involves the actual and substantial prejudice that's suffered by the defendant. So I think that there is a sort of visceral reaction that one might have when they look at the delay to say, that must be the prejudice in this case. But it is not the test of prejudice. It's part of it, perhaps, and a whole factual component of what type of evidence was lost as a result of the time delay. But it is not itself the prejudice. So I think it's important to go forward to treat this as we would any other case, depending on whether it's a year, 20 years, or what have you. Your Honor, I'm going to focus on Argument 2 in my brief today. Argument 1, as Your Honor should probably know, is more or less a challenge, or perhaps a setup, if you will, to ask the Supreme Court to reconsider its Lawson opinion, which was decided, I believe, in 1977, in the very early stages of this whole Fifth Amendment due process. Well, let me stop you there and ask you that question. Yes, Your Honor. So you're acknowledging that People v. Lawson does control? Absolutely. Absolutely. Do you think the trial court properly applied Lawson? I believe it properly applied Lawson if it properly determined there's actual and substantial prejudice. There's no denying the fact, I think, that under Lawson's balance shifting test, if a defendant proves actual and substantial prejudice, then the burden shifts, if you will, or the obligation shifts to the state to establish reasons for the delay, I believe that's how the Supreme Court promulgated its rule. And as I stated at the outset, we don't know. And so no answer sort of skews the balance, obviously, having the defendant's favor, which is part of the reason why, obviously, we want to go ahead and attack Lawson itself if it comes to that. But in terms of the Court's analysis, I do believe it correctly applied Lawson. What I don't believe it correctly did was apply the actual and substantial prejudice test that's part of Lawson. Lawson was an opinion derived from the U.S. Supreme Court cases, where essentially it follows federal due process precedent, where it essentially establishes that, well, we have a statute of limitations, and that is the embodiment of the due process concept with regards to delay, but it's not the end result or the end, you know, of the analysis, that a defendant can still raise a Fifth Amendment due process challenge, even if the case is brought within the limitations period. This case is certainly brought within the limitations period, because there is no limitations period for first-degree murder. I think that brings now to perhaps the second psychological impediment in this case. And that is that when you look at the arguments that were made, the things that the Court considered in its ultimate ruling in favor of the defendant, it's premised principally on the fact that the passage of time resulted in a loss of witnesses or documents, etc., which had an impairing ability in the defendant to investigate the case. Okay? As I worked on this case, and as I read the cases, I had to admit, and I think that anyone would, that there is sort of a niggling feeling that doesn't seem fair. I mean, yes, a lot of time has passed, and obviously avenues of investigation are foreclosed as a result of the passage of time. But the gut sense of unfairness is not the due process test, and the United States Supreme Court has been abundantly clear on that. This is a very strict, and it's a very exacting standard of actual substantial prejudice. And it goes towards identifying precisely whether this is a defendant lost that would have been part of the defense, but not only could it be so because of the passage of time. So I think, again, let me say two things with regard to that. Number one, we have to look at this in maybe sort of a cold approach, but we do have a specific test that's been articulated by the Supreme Court. We have a specific test articulated by both Supreme Courts, if you will, in regards to the exacting nature and the heavy burden the defendant needs to establish to prove actual substantial prejudice. But I just want to say this, and something that's kind of lost in all this, is that we're in kind of a cart before the horse situation here. Assuming, for the sake of argument, that this Court agrees with my position, and my position is basically this, we don't really know if there's been a due process violation because we don't really know exactly whether the defendant lost that as impeded as a particular defense the defendant wanted to put on. Let me give you a way-by-way example. A defendant wants to put on an alibi defense. So on DAPACs, defendants with Joe Schmo there at a bar when the murder occurred, then charges are not filed for 20 years, Joe Schmo dies, defendant now can't present his alibi defense because Joe Schmo is not around anymore. So he's got a witness, he's got a witness who's going to say something, he's got a witness who's got to say something that's going to be related to a particular defense. That's really where the cases kind of go with this, and I'll talk a little bit more about that in a second. But in this case, Mr. Daley, weren't almost all the witnesses gone? There were a substantial number of witnesses gone, but, Your Honor, I think it's important to note that when we talk about establishing a specific due process analysis and the requirement that the defendant show actual substantial prejudice, there are sort of competing interests here. I mean, number one, the court has to sort of balance that notion of the drastic remedy of dismissing a charge with the interest of the government or the state's interest, the people's interest in pursuing charges against defendants. But number two, the passage of time is not a unilateral impediment. The defendant doesn't have to present any evidence, doesn't have to testify, doesn't have to do anything. The case has burned proof beyond a reasonable doubt, and the state is getting no more benefit in this case by the passage of time of the defendant. That's why the test is articulated the way it is. If it were articulated purely on the basis of speculation, it would sort of gut the rule itself, because it would really just turn into a passage of time analysis. So I do think that the test is articulated, and like I said, it's hard to get past the idea that there's been all this time and these witnesses are gone. But that's not the end analysis. It is what's been lost and what's the result of that loss. And that's why when I say we have a carpet for the horse situation, it may very well be the case, Your Honors, that let's say you agree with me and say, well, the evidence at this point has not been developed enough for a court to say you've been actually substantially prejudiced. You've only posited possible prejudice or theoretical prejudice. The defendant could still go back, and once that defense is developed and say, well, I don't have a witness X or Y now to present this defense and re-raise this issue. I don't think that the court ruling on this with regards to this way the issue is framed is going to be raised judicata to anything that the defendant can raise later on. What we're basically saying is that we're just not there yet. Maybe the defendant can't, maybe the defendant can't. But as it stands right now, that evidence has not been put on to establish what's been determined to be actual substantial prejudice. Now, I've cited a lot of federal court, federal circuit court opinions and there are some state decisions as well. I think that the federal court opinions are, well, obviously not binding on this court any more than perhaps another appellate court's decisions in Illinois, but they are, I believe, relevant pertinence to the analysis because this is a federal due process question. Illinois applies the limited last step doctrine and it will follow the federal due process clause as the court did in Lawson. So when we look at the cases in the federal cases, when they've discussed what is the standard for actual substantial prejudice, they say the actual substantial prejudice is that the burden's on the defendant. It has to be actual prejudice and not the real possibility of prejudice inherent in an extended delay. The burden is exacting and it must be more than speculative that the mere passage of time itself does not constitute actual prejudice. However, it must be specific, concrete. I'll come back at the end and finish those thoughts. Thank you, Your Honor. Are you here for the appellate? May I please talk?  After the prosecution. I'm not used to speaking after the prosecution in this particular format. Counsel, could you make your appearance for the audience? Please forgive me, Your Honor. James Gomrick present on behalf of the defendant, FLE, Gary Warhol. Thank you. There is no new evidence that was garnered by way of the 2013 investigation of this case. This was a fact noted by Judge Hayda in properly applying lawsuit and in properly deciding how to handle the case at bar in dismissing the charge, the later charge that had been brought. Counsel makes reference to a 2013 investigation and not knowing, I believe he said, not knowing why charges were refiled. Charges were refiled by way of the receipt of a YouTube video. I've included that in the appendix. It's what triggered them looking into things. But basically, the procedural history is date of death, December 30, 72. We have charges filed against the defendant, Gary Warhol, in the spring of 73. You have the record before you, I believe. And ultimately, there's a dismissal in 74. Basically, the case goes dead at that point. And it lays there dormant from 74 to 2013. One thing that I do think is prudent for me to talk about is the standard of review that I submit is appropriate in this case because there is a point of disparity between the parties relative to that topic. It is the respectful submission, and in particular, given that the focus, it appears, at this juncture is on the second argument made by the appellant. It is the respectful submission of the appellee that the appropriate standard of review is that the ultimate legal conclusions that Judge Hayden made are subject to de novo review. But his factual determinations, and there are some, are... Would you address that his argument is that there isn't sufficient findings of actual substantial prejudice? So would you address that argument? I'll be happy to address that, Your Honor. It is my submission, A, that there are sufficient findings of actual and substantial prejudice, and B, that the defendant pled and, in point of fact, did show actual and substantial prejudice at the 19 March 2014 hearing. It has been proffered by the state in its brief, and again today, that the defendant never really revealed what his defense was. Well, if you examine the third averment of my pleading, I make reference to the mother, the biological mother of the decedent as being the alternative suspect. Was there any evidence at that hearing? Was there any... There was not testimony taken. The hearing, Your Honor, and you can see from the state's statement of facts, the hearing that was conducted before Judge Hayda involved the submission of oral proffers and the submission of literally dozens of pages of documents that were received by the court and were received into evidence. So, yes, there was evidence at the hearing in the 1973-74 investigation. That's the status of the file, a priori the filing of new charges. So, we pled saying, hey, look, there's two people in the trailer along with the newborn infant, and she's an alternative suspect, as we stated in our paragraph three. If you look at the record, you will see, in the defendant's record, I am pointing to her as the alternative suspect that we need to be able to develop in order to have a proper trial of this matter because you have to understand that there are no eyewitnesses in this case. This is not a case where there is anyone who will be called who can say, I saw Gary Warwick close within the trailer. You have the dead body. It's a circumstantial case that is predicated on a suggestion of false narrative. And so, in order to properly try that case, the parties have to be able to ascertain who was saying what to whom in the moments immediately following the arrival of Gary Warwick in the California Christian Welfare Hospital and in the days preceding. And it is important to note the days preceding because, as you can see from the briefs and from the transcript, Kathy Abernathy, who is our case, this isn't an alibi case, he's there, she shows up 10 days before this kid arrived at the hospital on the 30th of December. She alternatively, and that's from the one record that does remain, she alternatively indicates that the biological father of the child may have done harm to the child. We need, needed, and cannot any longer develop anything relating to those facts because all of those people are dead. We need, and I make reference to being able to see who was saying what to whom, we need to be able to show exactly what Kathy Abernathy's disposition was on the 30th of December. How do you do that? You talk to the people who talked to her. Can we do that? These medical transactions are gone. The chronology is a curiosity here because you have a five-day hospitalization that the state seeks to downplay between 20 December and 25 December. You then thereafter have an aunt who observes the minor child on two days, 26 and 27 December, and she's still around. She says this kid was at death's door four days or three days before he passes, and we then have the death of the minor. Now, the state in its brief wants to tell you the cause of death is not an issue. We are deprived of the ability by way of the inability to garner these records to bring in our own people to review exactly what was or wasn't there, and that amounts to actual and substantial prejudice. Again, this is not a case where there's an eyewitness who can say anything about what did or didn't happen. Beyond that, Ms. Abernathy was laboring under a mental health condition. Those records are unavailable to us. Again, notwithstanding the disputation of the state in their brief, we are entitled to ascertain and to ask a prior effect or ask Ms. Abernathy before a jury about what your status was and be able to utilize those records in support of our examination. All of that accrues to our actual and substantial prejudice. So I hope that I'm responding to your inquiry that what is our defense? Our defense is she did, and we can't in any way show that at trial. It's beyond preparing for trial, which obviously is a problem here. But you couldn't show it at a trial now because everyone is dead. There is a suggestion in the government's brief relative to 341 noncompliance. I do want to address that if it doesn't displease the court.  of my statement of facts, I do point to Ms. Abernathy and this relates to the forensic pathologist in the autopsy and the fact that the kid had been at least prepped for embalming. They drained the kid, notwithstanding specific directives to the contrary. So the medical evidence that they talk about from Dr. Nanduri originating from Dr. Holman is the byproduct of science that I submit is questionable. We do cite in our brief to C-74 and C-95 and you will see that at page six of my brief in the statement of facts. So I respectfully submit that we have complied with 341. We have and we did show actual and substantial prejudice in this case and this is the entire doctrine. Thank you, ma'am. Thank you. Mr. Butler. Alyssa, I missed something. This is actually the first time I've ever heard the defense uttered by a defense counsel what the defense is going to be in the case. Although it makes sense, I suppose, when you look at the types of things that he claims and you want to investigate and see what they are. Not really the point. The point here is, I suppose, that I think this case ultimately comes down to when you look at the hearing in this case, the arguments that are made before the circuit court, it kind of comes down to a sort of, having to make this sort of stark decision, I suppose, that what really is going to constitute actual and substantial prejudice. As I've articulated in these federal cases, they've made it clear that more or less you have to define specific something that you don't have because of the passage of time, whether by death or loss or whatever, that would have advanced this particular theory and that you can no longer present it. And what we have in this case is when you look at it, and I'm not going to get into all that. It's pretty well laid out in the brief, the state's brief. But the court's articulation of the actual substantial prejudice really comes down to, I guess, sort of three components. Witnesses to inconsistent statements by Kathy Abernathy who are deceased. And I know in that regard, we don't know who those witnesses are. But in any event, the state actually will see and it's in one of its emotional reconsider, I believe. So I'll tell you what, we'll just go ahead and admit to any inconsistency. She'll admit to any inconsistency. You don't need any impeachment witnesses anymore because the impeachment is already complete. The second aspect of the courts, and I'm giving very brief synopsis here, is that nurses, doctors and other personnel that provided medical care are deceased so the defendant is deprived of the opportunity to present evidence that he was not the cause of Abernathy's death. But the problem is it's never articulated that there was an alternative form of death. Now what we have is, you know, a pathologist finding that it was a lacerated liver which would have caused death within 24 hours. The defendant is referring to medical records of an earlier treatment at a hospital approximately 10 days before where the child was treated for injuries and I think there's documents to support that. To intervene briefly to address something that Justice Moore said, this was a type of hearing where I think everyone sort of agreed to sort of stipulate particular records and there was no contestation of the defendant's representations of what he could or could not interview. So we accept all that as accurate. We're not contesting anything in that. So what the defendant says we accept as true for purposes of what he's claiming that he cannot find. But nonetheless, I think that when you look at the things that the defendant articulates in terms of say a physician's report or EMTs that arrive at the scene, what we have here is really essentially is a string of people who could provide potentially helpful statements or witness statements for defense or maybe not. And here's the thing.  actual substantial prejudice it can sort of reduce it to kind of a pinpoint analysis. If the question is left to hypothesis that a particular witness has stated that he or she has not seen and could be helpful to the defendant, that's not actual substantial prejudice. If it's possible that a particular witness's statement might be damaging to the defendant and helpful to the state, that's not actual substantial prejudice. If a particular witness has a statement or information would advance the defense and can no longer be presented, that is actual substantial prejudice. And I think that when this court looks at the arguments that were made and when it looks at the court findings, which is replete with references not only to essentially theoretical or potential prejudice but not even specific. At one point the court mentions that there are numerous family members who can no longer testify. Who are they? I mean, we don't get to that. In the defendant's brief, it was raised that the other front suspect, Kathy, her mother ends up marrying the lead investigator. That's true. And the lead investigator would no doubt testify at the trial. Correct. This potentially could be brought up as a bias that the lead investigator may have. Potentially. Potentially. That's a big one. So that's, you think,  just the fact that he's dead and Kathy's mother's dead and neither can get on the stand that that is not a substantial prejudice. I'm not saying that that's a substantial prejudice at this time. I'm not even sure that it's ever articulated as specifically as you just did, Your Honor. What we've had is there we have someone's died and someone had a relationship with the witness and it sort of ended there and it's kind of like, so how do we now pursue this particular line of inquiry? Again, it's a psychological hurdle. I get it. I understand that it's conceptually, say to yourself, it doesn't seem fair, but that's not the due process standard. The due process standard is set high purposely by the Supreme Court, Supreme Courts if you will, to say that if the word potentially appears anywhere in the discussion of the type of things that have been lost, then you haven't met that standard. Thank you. We'll take this piece under advisement. Issue of written disposition in due course.